IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BAO C. XIONG,

        Plaintiff,                    No. CIV S-05-CV-00472 PAN (JFM)

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.               ORDER

                            /

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, plaintiff's motion for summary judgment is denied, the Commissioner's cross-motion for summary judgment is denied, and the matter is remanded for further proceedings consistent with this order.

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated October 29, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of depressive disorder not otherwise specified (NOS) and lower back pain possibly consistent with osteoarthritis, but that these impairments do not meet or medically equal a listed impairment; plaintiff's allegations about the severity of her impairments are not entirely credible; plaintiff has the residual function to lift and carry 50 pounds occasionally and 25 pounds frequently; plaintiff is able to sit, stand, or walk about six hours in an eight hour day, and perform simple, repetitive

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9thCir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

tasks; plaintiff is unable to communicate in English; plaintiff has the residual functional capacity to perform the full range of medium work; plaintiff's capacity for medium work is not substantially compromised by any significant nonexertional limitations; and plaintiff is not disabled. Administrative Transcript ("AT") 17-18.

Plaintiff contends that the ALJ committed numerous errors. Plaintiff argues that the ALJ failed to consider all of her impairments in combination. In addition, plaintiff alleges that the ALJ improperly rejected the medical opinion of plaintiff's treating physician, as well as the lay opinions of plaintiff and her third-party witness. Plaintiff also contends that the ALJ erred by relying on the Medical Vocational Guidelines ("the grids") to reach his conclusion that plaintiff was not disabled. Finally, plaintiff contends that the ALJ failed to properly develop the record with regard to plaintiff's cultural background and its impact on her symptoms.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9thCir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9thCir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9thCir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9thCir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9thCir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9thCir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9thCir. 1989). If

substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9thCir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9thCir. 1988).

III. Analysis

    a. The ALJ Erred in His Evaluation of Plaintiff's Impairments.

The ALJ found plaintiff suffered only from severe depression and lower back pain consistent with osteoarthritis. AT 17. In reaching this conclusion, the ALJ improperly evaluated the medical evidence in the record regarding plaintiff's various physical and mental ailments. As it concerned plaintiff's mental impairments, the ALJ erred in his consideration of the evidence.

Plaintiff contends that the ALJ improperly assessed the severity of her impairments and failed to consider all of them in combination. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Plaintiff argues that the ALJ failed to recognize as severe a number of her alleged physical and mental impairments and that the ALJ failed to consider them in combination. Plaintiff's initial application for benefits complained of headache, dizziness, anxiety, nightmares, memory loss, difficulty sleeping, poor vision, and stomach ache. AT 56. In addition, plaintiff complained to her doctors that she suffered from coughing, AT 126, 129, 137, 139, chronic

4

1  diarrhea, AT 130, 141, 144, 172, arthritis, AT 135, allergies, AT 138, and eye problems, AT 167,
2  175.  At the administrative hearing, plaintiff added complaints of back pain and neck pain, AT
3  301, as well as numbness and pain in her foot caused by high cholesterol, AT 302.

4  Although the burden is on plaintiff at step two of the sequential evaluation, see
5  Tidwell v. Apfel, 161 F.3d 599, 601 (9thCir. 1998), counsel for plaintiff has offered no
6  meaningful argument in support of the claim that the ALJ failed to fully credit her physical
7  impairments at step two.  A mere recitation of medical complaints does not demonstrate how
8  each of the conditions included in that recitation impacts plaintiff's ability to engage in basic
9  work activities.  See Webb v. Barnhart, 433 F.3d 683, 688 (9thCir. 2005) (recording of plaintiff's
10 complaints without objective evidence to support them is generally not evidence of a severe
11 impairment).  In addition, in spite of plaintiff's frequent complaints of debilitating physical
12 impairments, there is no indication in the medical record of any diagnosis sufficient to preclude
13 plaintiff from working.

14 The ALJ provided minimal analysis of the evidence from Dr. Trinh, the physician
15 who treated plaintiff's alleged physical impairments.  However, this failure to discuss in his
16 findings the evidence relating to plaintiff's numerous physical complaints does not mean that it
17 was not considered.  It is plaintiff's burden to present evidence of disability at step two of the
18 sequential analysis.  With regard to the myriad physical complaints, plaintiff failed in that task.
19 The ALJ is under no obligation to discount theories of disability wholly unsupported by the facts.
20 See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler,
21 739 F.2d 1393, 1394-95 (9thCir. 1984).

22 Starting on August 25, 1997, Dr. Trinh treated plaintiff no fewer than 25 times.
23 AT 124-74.  While plaintiff complained frequently of her various impairments, the ALJ noted
24 that clinical findings by Dr. Trinh in support of those complaints were minimal.  AT 13.
25 Laboratory tests consistently came back normal.  AT 132-33, 151, 169, 171, 173, 271-76.
26 /////

Referrals to specialists for plaintiff's diarrhea and eye problems returned medical findings that were mostly unremarkable. AT 152, 157-59, 164.

Furthermore, there is little evidence of any actual treatment by Dr. Trinh in response to plaintiff's complaints. Dr. Trinh's notes show no treatment more aggressive than refilling plaintiff's prescriptions for psychotropic and pain medications, AT 124, 125, 126, 127, 129, 135, 142, with frequent appointments where no treatment was offered, AT 128, 130, 131, 136, 137, 140, 141, 144, 145, 147, 148. In light of this medical record, Dr. Trinh's treatment of plaintiff can best be described as very conservative.

Other medical evidence in the record supports the ALJ's conclusion that plaintiff did not suffer from any severe physical impairment other than lower back pain. As discussed by the ALJ, examining physician Dr. O'Brien, a diplomate in internal medicine, reported no limitations following her examination of plaintiff. AT 176-81. Doctors who assessed plaintiff's mental impairments found no obvious physical limitations. AT 187, 210, 238.

With regards to plaintiff's mental impairments, the ALJ's conclusion is in error. Plaintiff's treating mental health doctor, Dr. Nguyen, repeatedly opined that plaintiff suffered from bereavement issues and parent-child problems, as well as depression. AT 122, 259, 266. Both bereavement and parent-child relational problems are classified in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM IV-TR")[2] using V Codes. These codes are used to identify problems that fall outside the criteria for a DSM disorder, but still require clinical treatment.

This conclusion by plaintiff's treating doctor is supported in part by a non-examining doctor with the State Agency. In his assessment of the medical evidence, this State Agency doctor, to whom the ALJ gave great weight, AT 14, opined that plaintiff suffered from

---

[2]The DSM IV-TR is published by the American Psychiatric Association. It contains a listing of psychiatric disorders that are accompanied by a set of diagnostic criteria. The purpose of the DSM IV-TR is to facilitate communication among mental health professionals and to assist diagnoses by focusing on patterns of symptoms that tend to cluster together.

unresolved bereavement. AT 229. In light of these two medical opinions, it cannot be said that the evidence "clearly establish[es]" the absence of a severe impairment. Social Security Regulation (SSR) 85-28.

Furthermore, unlike the lack of significant treatment for her physical impairments, plaintiff was prescribed numerous prescription medications to treat her various psychiatric conditions. On June 27, 2003, plaintiff was taking Trazodone and Zoloft for her depression. AT 256. She also took Ativan (Lorazepam) and Buspar for insomnia and anxiety, and Seroquel for hallucinations, delusions, and confusion. Id. In addition, upon Dr. Nguyen's recommendation, plaintiff also attended a support group for Hmong refugees. AT 122.

The ALJ did note that plaintiff reported some improvement as a result of her medication and support group. However, given the de minimis standard of step two, Smolen, 80 F.3d at 1290, the ALJ's failure to recognize the full extent of plaintiff's mental limitations was in error. While plaintiff bears the ultimate burden of proving disability as a result of her impairments, see Webb, 433 F.3d at 688, it is apparent that sufficient evidence exists showing that she suffers from the severe impairments of bereavement issues and parent-child problems, in addition to her depression.

The ALJ's finding that plaintiff's physical impairments are limited to only lower back pain possibly consistent with osteoarthritis was supported by substantial evidence, or rather, the lack thereof, in the record. However, his conclusion that plaintiff's mental impairments consisted only of depression was in error. Remand is required in order to permit the ALJ to complete the sequential analysis in light of the true nature of plaintiff's impairments.[3]

/////

---

[3] There is substantial evidence in the record to conclude that plaintiff suffers from severe mental impairments other than her depression. Regardless, as discussed in detail in paragraph b, such impairments must be credited as a matter of law because the ALJ failed to properly weigh the opinion of Dr. Nguyen, plaintiff's treating mental health provider.

7

1            b. The ALJ Erred in His Evaluation of the Medical Evidence in this Case.

2          The ALJ gave great weight in his findings to the medical opinions offered by the State Agency doctors. AT 14. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. The ALJ's weighing of the medical evidence in this case was improper.

         To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

         The record contains evidence of three consultations provided by the nonexamining physicians with the State Agency to which the ALJ assigned great weight. As they concerned plaintiff's physical impairments, the State Agency found that plaintiff had no

8

1  limitations.  AT 215.  In addition, on two occasions, the State Agency determined that plaintiff
2  suffered from depression, but that this mental impairment produced no more than mild
3  limitations on plaintiff's ability to function.  AT 208, 236.

4         Plaintiff's treating physician for her physical problems was Dr. Trinh.  Dr. Trinh
5  recorded plaintiff's various complaints; however, this notation on a medical chart is a far cry
6  from a treating physician's opinion.  As noted above, Dr. Trinh found little conclusive evidence
7  to support any diagnosis of significant physical injury.  All laboratory tests were normal.
8  Referrals to specialists came back unremarkable.  Unlike her mental health treatment, any
9  treatment for plaintiff's physical complaints by Dr.Trinh was minimal.  Given the nature of the
10 medical evidence of plaintiff's mental impairments, the ALJ's treatment of Dr. Trinh's opinion
11 was not in error.

12        While failing to expressly acknowledge Dr. Trinh, it is not apparent that the ALJ
13 rejected his medical opinion.  In fact, the ALJ's findings, the opinion of the State Agency, and
14 the opinions of the various specialists and examining physicians identified in the record, are
15 entirely consistent with the medical evidence offered by plaintiff's treating doctor.  To argue that
16 the ALJ rejected the opinion of plaintiff's treating physician is to conclude that Dr. Trinh offered
17 an opinion.  Such was not the case.  While the medical records provided by Dr. Trinh document
18 frequent visits by plaintiff, they reveal little else.  It is not apparent that Dr. Trinh provided any
19 opinion inconsistent with that offered by the ALJ regarding plaintiff's condition or the extent of
20 her impairment.

21        Furthermore, contrary to plaintiff's arguments, the ALJ did in fact discuss
22 Dr.Trinh's treatment of plaintiff.  The ALJ found that the treating records failed to document any
23 abnormalities.  AT 13.  Given the limited medical evidence of any impairment contained in the
24 records provided by Dr. Trinh, this conclusion was proper.

25        In contrast, the ALJ's findings as they concerned treatment by plaintiff's mental
26 health providers were in error.  Plaintiff's primary treating physician at Sacramento County

1   Mental Health APSS Clinic (Sac County) was Dr. Nguyen.[4]  However, the last entry in the
2   Sacramento County medical records shows that a different mental health professional saw
3   plaintiff.  This doctor, whose name is illegible on the treatment records, diagnosed only a major
4   depressive disorder.  The State Agency opinions and the ALJ's findings that plaintiff suffers
5   from a severe depressive disorder NOS are consistent with this opinion.

6           These findings are not consistent with the opinion of Dr. Nguyen.  The record
7   shows Dr. Nguyen saw plaintiff no fewer than 15 times, starting with her initial appearance at the
8   clinic on December 6, 2001, AT 118, until June 6, 2003, AT 258.  In addition to her depression,
9   Dr. Nguyen diagnosed plaintiff with the additional clinical disorders of unresolved bereavement
10  and parent-child relational problems.  AT 259.

11          The ALJ's findings are also inconsistent with those of the examining psychiatrist,
12  Dr. Randhawa.  On April 6, 2002, Dr. Randhawa conducted a full range of tests and thorough
13  clinical evaluation in order to assess plaintiff's mental capacity.  The ALJ recognized that, unlike
14  the other opinions contained in the record, Dr. Randhawa found no evidence of depression.  AT
15  15, 186.  However, he did note bereavement and difficulties as a single parent in his analysis of
16  plaintiff's various psychosocial and environmental problems.  AT 186.

17          The ALJ failed to recognize these multiple opinions contained in the record.
18  Indeed, as with his evaluation of the evidence regarding plaintiff's physical impairments, his
19  analysis of the mental health records provided by the treating physicians is limited.  While such
20  brevity may have been warranted by the nature of plaintiff's physical complaints, it is not
21  warranted when it comes to her complaints of mental impairment.

22          It cannot be said that the litany of plaintiff's mental impairments is captured in a
23  finding that she suffers from severe depression.  The V Codes document distinct diagnostic
24  findings for bereavement and parent-child problems.  In addition, the DSM IV-TR reinforces this

---

[4]While the record identifies Dr. Nguyen as a doctor, AT 117, 119-122, it fails to clarify whether he is a psychologist or a psychiatrist.  In either respect, his opinion is entitled to the preferential weight as a result of his status as an "acceptable medical source."  20 C.F.R. § 416.913(a)(1) or (2).

1  distinction by limiting the extent of major depressive episodes, excluding things that are not
2  better accounted for by bereavement.  DSM IV-TR.  The ALJ's failure to address the medical
3  opinion of plaintiff's physician that she suffered from these distinct impairments, or to offer any
4  basis for the rejection of that opinion, was in error.
5  　　　　　The ALJ's evaluation of the evidence of mental impairment in this case was
6  seriously flawed.  The ALJ failed to resolve the various differences of opinion contained in the
7  medical record.  Contrary to the requirements of the law, he gave no weight to the opinion of Dr.
8  Nguyen, nor did he adequately explain his reasons for this failure.
9  　　　　　In fact, the ALJ did not even mention Dr. Nguyen.  While the ALJ spent only five
10 lines of his opinion on the 18 months of treatment provided by plaintiff's treating physicians at
11 Sac County, he devoted 16 lines of his opinion to the one day examination by Dr. Randhawa.
12 AT 14.  Furthermore, while he stated that he gave the State Agency opinions great weight, he did
13 so summarily and without any discussion of their findings.  An ALJ must fully evaluate all of the
14 evidence in the record.  See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir.
15 2001)(holding that the findings were not supported by substantial evidence when the ALJ
16 selectively relied on some entries in the medical record).  With regard to his treatment of the
17 medical opinion of plaintiff's treating mental health provider, the ALJ neither applied the proper
18 legal standard nor reached any conclusions regarding its rejection that were supported by
19 substantial evidence in the record.
20 　　　　　The ALJ also stated that the State Agency doctors found "no mental limitations."
21 AT 14.  This is not a correct evaluation of the evidence.  Both evaluations by the State Agency
22 found plaintiff suffered from mild difficulty in maintaining social functioning.  AT 208, 236.
23 While mild impairments do not generally form the basis for a severe impairment, see 20 C.F.R.§
24 416.920a(d)(1), to characterize the evidence as showing no mental limitations is improper.  In
25 addition, the State Agency reported in its initial assessment that plaintiff suffered from
26 unresolved bereavement.  AT 229.

The ALJ properly noted in his findings that plaintiff had reported some improvement in her symptoms as a result of medications and participation in a Hmong support group. AT 14. Regardless, substantial evidence does not support any conclusion that plaintiff's bereavement and parent-child problems had resolved. Dr. Nguyen offered a consistent opinion that plaintiff suffered from multiple problems that are recognized in the psychiatric community, including depression, bereavement disorders and parent-child problems. AT 122, 259, 266. State Agency doctors recognized plaintiff's bereavement issues. AT 229. These opinions differed from others found in the record. Prior to dismissing Dr. Nguyen's conclusions, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record. The ALJ failed to provide such an analysis.

Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, that opinion is credited "as a matter of law." Lester, 81 F.3d 821 at 834 (citing Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989). In this case, in addition to her depression, it must be found that plaintiff suffers from bereavement issues and parent-child problems as they are defined under the V codes in the DSM IV. Remand is required in order to permit the ALJ to continue his sequential analysis given these findings.

    c. The ALJ Properly Evaluated the Testimony of Plaintiff and Her Third-Party Witness.

The ALJ found plaintiff to be not credible. AT 15. In making this finding, the ALJ noted the numerous inconsistencies between plaintiff's complaints and the evidence in the record. This finding by the ALJ was not in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9thCir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9thCir. 1990); Rashad v.

/////

Sullivan, 903 F.2d 1229, 1231 (9thCir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9thCir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ discussed the objective evidence supporting some of plaintiff's complaints of disability, finding plaintiff to suffer from severe lower back pain and depression. In spite of this medical evidence, the ALJ found plaintiff to be not credible. According to the ALJ, the inconsistencies in plaintiff's complaints cast serious doubt upon her credibility.

1        The ALJ noted numerous inconsistencies between plaintiff's complaints of
impairment and the evidence in the record. AT 15, 16. Plaintiff complained of not being able to
cook, go shopping, tend to her personal needs, or socialize. AT 76-78, 303. She also made
complaints of insomnia or difficulty sleeping. AT 125, 127, 130, 136, 137, 146, 148, 149, 254,
262, 266, 303. However, plaintiff told Dr. Randhawa that she cooks when she can, goes
shopping with her children, takes care of her immediate personal needs, socializes with family
and friends without compromise, and has no difficulties with her sleep. AT 184.

         The inconsistencies continued when it came to describing the source of plaintiff's
back pain. Plaintiff told Dr. Randhawa that she injured her back after a fall while running from
the Communists in her home country of Laos sometime around 1978. AT 184. However, she
told Dr. O'Brien that she injured her back in 1999, and could recall no acute strain or trauma as
the source of the injury. AT 176. This later version of events is consistent with what she told
doctors at Sac County. AT 258. Plaintiff told a third version at the administrative hearing,
testifying that she injured her back in 2001. AT 301.

         The ALJ also noted that many of plaintiff's complaints lacked an objective
medical foundation. AT 15. In spite of the fact that plaintiff used a cane, AT 301, the ALJ found
no evidence of any prescription for such an assistive device. Id. In fact, Dr. O'Brien observed
plaintiff walking normally during her examination. AT 178.

         Furthermore, there was a decidedly conservative approach to the treatment of
plaintiff's physical impairments that casts doubt upon the extent of her injuries. See Burch v.
Barnhart, 400 F.3d 676, 681 (9thCir. 2005)("The ALJ is permitted to consider lack of treatment
in his credibility determination.") Absent prescription painkillers, there was no treatment by
plaintiff's treating physician more aggressive than to refer her to specialists. Those referrals
consistently came back unremarkable.

         The lack of objective medical evidence to corroborate plaintiff's subjective
complaints of pain, in and of itself, is not a proper basis to discredit plaintiff. See Smolen, 80

F.3d at 1285.  However, the ALJ is permitted to utilize the ordinary techniques of credibility evaluation, including "prior inconsistent statements" made by plaintiff.  Id. at 1284; see also 20 C.F.R. 404.1529; SSR 96-7p.  When the lack of objective evidence to support plaintiff's complaints is viewed in combination with her inconsistent statements and conservative treatment, the ALJ's conclusion regarding plaintiff's credibility was not in error.

Plaintiff's testimony regarding her condition was not the only non-expert evidence in the record.  Two third-party questionnaires completed by plaintiff's son, as well as a field report were submitted in plaintiff's application for benefits.  While varying in some important aspects, all of these lay witness documents describe general overall conditions consistent with those complained of by plaintiff.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."  Nguyen, 100 F.3d at 1467; see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9thCir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  However, the only lay witness evidence contained in the record are a field office report, AT 67, and two third-party questionnaires completed by plaintiff's son, AT 69, 85.  Such documentary evidence is not testimony.  There is no requirement for the ALJ to consider such evidence.  See 20 C.F.R. § 416.913(d)("[W]e may also use evidence from other sources to show the severity of your impairment").

Testimony is "a statement made by a witness, under oath, usually related to a legal proceeding or legislative hearing."  Barron's Law Dictionary, 521 (5th ed. 2003).  Written statements included as part of an initial application for benefits cannot be considered testimony. While the ALJ's analysis of the record was deficient in some respects, particularly as it concerned evidence of plaintiff's mental impairment, it is clear that he considered the entire

record. AT 13. As there is no requirement to consider third-party, lay witness statements, the ALJ's failure to expressly discount the non-testimonial statements of third-party lay witnesses was not in error. Compare 20 C.F.R. § 416.913(e)(2)(third party evidence may assist the ALJ in reaching his decision) with 20 C.F.R. § 416.913(a)("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).)

Furthermore, even if the unsworn statements by lay witnesses were considered testimony, the failure to discuss them in this case would be harmless error. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9thCir.1990) (harmless error analysis applicable in judicial review of social security cases); Vincent v. Heckler, 739 F.2d 1393, 1395 (9thCir. 1984)(holding that harmless error applied after ALJ failed to discuss plaintiff's son's testimony because decision was supported by substantial medical evidence).  Plaintiff's son merely repeats plaintiff's discredited testimony, and does not describe any different or greater level of impairment than that testified to by plaintiff.  Consequently, it is difficult to see how the ALJ's failure to explicitly accept or reject their testimony affected his ultimate decision. See Books v. Chater, 91 F.3d 972, 980 (7thCir. 1996); see also Young v. Apfel, 221 F.3d 1065, 1068 (8thCir. 2000)(holding that "although specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" when the ultimate findings are supported by substantial evidence in the record).

The ALJ need not expressly discuss all evidence in the record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill. 1991). Requiring an ALJ to credit or discredit every piece of evidence in an administrative record would be an "impossible burden." Id. Given the nature of the third-party questionnaires, and the ability of plaintiffs to call witnesses at their administrative hearing, the failure to expressly discuss and discount evidence provided by the lay witness was not in error.

The factors considered by the ALJ to find plaintiff less than credible were all valid and supported by the record. There exists substantial evidence in the record, including the

1  inconsistencies in plaintiff's complaints and the lack of objective medical evidence, to support
2  the ALJ's findings.  The ALJ's credibility determination was based on permissible grounds and
3  will not be disturbed.

    d. <u>The ALJ's Application of the Grids was in Error.</u>

    The ALJ determined that plaintiff had the residual functional capacity to perform the full range of work at the medium exertional level.  AT 17.  In addition, the ALJ stated that plaintiff's nonexertional limitations precluded her from performing anything more complicated that unskilled work.  <u>Id.</u>  In applying the Medical-Vocational guidelines, the ALJ found plaintiff to be not disabled.  However, as a result of the errors noted above, the ALJ's findings were premature and must be reconsidered on remand.

    The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  <u>See</u> generally <u>Desrosiers</u>, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

    There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9thCir. 1985); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5]  <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9thCir. 1990), <u>overruled on</u>

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; <u>compare</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

1   other grounds, <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9thCir. 1991) (en banc); <u>Polny v. Bowen</u>, 864
2   F.2d 661, 663-64 (9th Cir. 1988); <u>see</u> <u>also</u> <u>Odle v. Heckler</u>, 707 F.2d 439 (9thCir. 1983)
3   (requiring significant limitation on exertional capabilities in order to depart from the grids).

4         The ALJ's findings failed to incorporate plaintiff's mental limitations as they
5   concerned her impairments of bereavement and parent-child problems. As a result, any
6   application of the grids is necessarily incomplete. Remand is necessary in order to permit the
7   ALJ to continue the sequential analysis in light of the true nature of plaintiff's impairments.
8   Upon arrival at step five of the renewed sequential analysis, application of the grids may or may
9   not be appropriate.

10       e. <u>The ALJ's Development of the Record as it Concerned Plaintiff's Cultural</u>
11   <u>Limitations was not in Error.</u>

12         Plaintiff contends that the ALJ failed to consider the impact her culture has upon
13   the presentation of her symptoms. This argument is without merit. Plaintiff has presented no
14   evidence to support her theory that the severity of her impairments has been impacted by the
15   cultural norms of Hmong society.[6]

16         The ALJ has a burden "to conscientiously and scrupulously probe into, inquire of,
17   and explore for all the relevant facts" in order to protect plaintiff's interest. <u>Id.</u>, quoting <u>Vidal v.</u>
18   <u>Harris</u>, 637 F.2d 710, 713 (9thCir. 1981); <u>Cox v. Califano</u>, 587 F.2d 988 (9thCir. 1978). This
19   duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are
20   elicited at hearing. <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully

---

22       Non-exertional activities include mental, sensory, postural, manipulative and
environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §
23   416.969a (c) (2003); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability
24   to work without directly affecting his or her strength, the claimant is said to have nonexertional
(not strength-related) limitations that are not covered by the grids." <u>Penny v. Sullivan</u>, 2 F.3d
25   953, 958 (9thCir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

26      [6]The Hmong are an Asian ethnic group speaking the Hmong language, whose homeland
is in the mountainous regions of southern China, northern Vietnam, Laos, Myanmar, and
Thailand. http://en.wikipedia.org/wiki/Hmong_people

and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).

The burden of proof for steps one through four of the sequential analysis rests upon plaintiff. Bowen, 482 U.S. at 146 n.5. Plaintiff has provided no medical or other evidence to support her theory. None of plaintiff's doctors, each of whom devoted significant time and effort to diagnosing plaintiff's impairments offered any indication that her culture played more than a minor part in her ailments. The only mention of plaintiff's culture contained in the medical record involved her referral by Dr. Nguyen to a Hmong support group. AT 122. This is hardly substantial evidence warranting an anthropological inquiry by the ALJ into manifestations of physical and mental illness by Hmong people. Indeed, the only limitations posed by plaintiff's heritage noted by any of her doctors involved language barriers that prevented her complete integration into society and precluded her from performing some basic tasks, such as handling money. AT 186-87.

Plaintiff contends that the ALJ improperly failed to consider this issue in spite of the fact that plaintiff, through counsel, raised it at her hearing. Plaintiff's pursuit of this issue has been limited to bare assertions at the hearing that a "conversion disorder," must be considered by the mental health experts. AT 305. However, plaintiff presented no such evidence of any failure by the mental health experts to consider plaintiff's culture at the hearing or in subsequent motions filed in pursuit of this appeal. Plaintiff simply disagrees with the examining psychiatrist's opinion that she does not suffer from depression and blames that conclusion on a failure to fully appreciate Hmong culture.

Such an argument is without merit as plaintiff fails to recognize that the ALJ did in fact conclude that, contrary to Dr. Randhawa's opinion, plaintiff suffered from severe depression. Any allegation that Dr. Randhawa's opinion failed to account for the nature of

/////

1  mental illness within the Hmong culture was necessarily corrected by the ALJ's conclusion. The
2  ALJ's finding was not in error.
3    For the foregoing reasons, this matter will be remanded under sentence four of 42
4  U.S.C. § 405(g) for further development of the record and further findings addressing the
5  deficiencies noted above.
6    Accordingly, IT IS HEREBY ORDERED that:
7    1. Plaintiff's motion for summary judgment is denied;
8    2. The Commissioner's cross motion for summary judgment is denied; and
9    3. This matter is remanded for further proceedings consistent with this order.
10 DATED: August 29, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

13/Moulds Social Security Cases
Xiong.ss.wpd